**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| I.M., and T.R., by and through their | ) | |
| respective Guardians Ad Litem, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 5:22-cv-00007-FL |
| | ) | |
| Granville Board of Education, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COMES, Plaintiffs, I.M. and T.R., complaining of Defendants as follows:

<u>PARTIES</u>

1.  Plaintiff I.M., was at all times relevant to this action, a 15 year old African American male resident and citizen of Granville County, North Carolina and a 9th grade student attending Granville Central High School.

2.  Plaintiff T.R., was at all times relevant to this action, a 14 year old African American female resident and citizen of Granville County, North Carolina and a 9th grade student attending Granville Central High School.

3.  Defendant Granville Board of Education ("BOE") is the Local Education Authority ("LEA") for Granville County Public Schools, and the duly authorized corporate body that provides public education to students in Granville County. It maintains a central office address of 101 Delacroix Street, Oxford, North Carolina 27565.

<u>VENUE AND JURISDICTION</u>

4. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) because the Defendant resides in the Eastern District of North Carolina.

5. Jurisdiction is proper pursuant to 28 U.S.C. §1331 because the case in controversy arises under the U.S. Constitution and the laws of the United States.

6. Defendant BOE is a political subdivision of the State of North Carolina, which has waived governmental immunity and/or sovereign immunity because it participates in a contractual risk pool that insures certain acts or omissions by its members or participants pursuant to N.C. Gen. Stat. §115C-42, and/or is otherwise excluded from such waiver by the nature of the violations alleged herein.

<u>FACTS</u>

7. Plaintiffs I.M. and T.R., (collectively referred to as "Plaintiffs"), each have been the victims of harassment and bullying by students attending Granville Central High School.

8. Defendant BOE is charged with protecting the health, safety and welfare of the students in its care.

9. Neither of the Plaintiffs had had any significant disciplinary action taken against them while attending Granville Central High School ("GCHS") prior to the September 27, 2021 incident, as each student was new to the campus when the violation of their civil rights occurred.

10. Defendant BOE is a recipient of federal funds.

<u>Pattern of Harassment and Bullying of Plaintiffs I.M. and T.R.</u>

11. N.C. Gen. Stat. § 115C-407.15 prohibits harassment and bullying in the public schools.

12. Plaintiff I.M. began reporting incidents of harassment, bullying and cyberbullying on social media by classmates to teachers, assistant principals and the principal of Granville Central High School ("GCHS") beginning in the first week of September of 2021.

13. Plaintiff T.R. began reporting incidents of harassment, bullying, cyberbullying, and verbal and physical assault by classmates in mid-September of 2021.

14. Plaintiff I.M.'s mother sent emails detailing these incidents to school officials, including but not limited to the classroom teacher and the principal, as did Plaintiff I.M. only to be told that no action could be immediately taken.

15. Plaintiff I.M.'s father and mother had subsequent oral and in person communications with school personnel, including but limited to the principal, regarding the fact the students have called him "Gay," "Nigger," "Snitch," and other derogatory terms while threatening to do him physical harm both at school and on social media.

16. Plaintiff T.R.'s mother has called the school on multiple occasions requesting to speak with the principal and assistant principal regarding harassment, bullying and cyberbullying of her daughter.

17. Plaintiff T.R. has been called "Nigger," "Ugly" and a lover of gays in reference to her friendship with I.M., and told that she would be beat up along with I.M., if she and others continued to remain friends with him.

18. On or about September 21, during Ms. Keaton's math class T.R. was called a racist name, in the presence of Ms. Keaton, by a white male student, D.[1] and upon information and belief, neither the school administration nor Defendant BOE took any action.

---

[1] The student identified as "D" has a last name that is unknown at this time. Although his first name is known because many of the students involved in this matter are minors only their initials are being identified.

19. Ms. Keaton was aware that D.T., a white male student[2], and I.M. had "a disagreement" in early September of 2021 and chose to move I.M. to the rear of the classroom, despite I.M. having complained to school personnel of D.T.'s harassing behaviors prior to being moved.

20. Plaintiffs identified the students they allege to have communicated threats, made racist remarks, harassed, bullied and cyberbullied them to school officials on several occasions, these students include but are not limited to D.T. and D., the two white male students, and T.D., S.M., J.T., and R.M. (collectively, the "harassment conspirators").

21. Upon information and belief, one or more of the students identified by Plaintiffs continued to engage in violent and/or disruptive behaviors at school.

22. Upon information and belief, it was known by other students that the harassers, bullies and cyberbullies intended to attack Plaintiffs on or about the 27th day of September 2021.

Incident on September 27, 2021 and Subsequent Suspension

23. Upon information and belief, the identified harassers conspired to harass physically assault and batter Plaintiffs on the 27th day of September 2021.

24. Upon information and belief, the harassers videotaped their attacks on Plaintiffs with the purpose and intent of posting the same to Snapchat and/or other social media, as has been routinely done in the past by GCHS students engaging in acts of physical aggression.

25. On September 27, 2021, Plaintiffs were in fact attacked in Ms. Keaton's math class by T.D. one of the harassment conspirators.

---

[2] Identified in Defendant BOE documents as "Student 1."

26. As a result of the attack by T.D. the school wrongfully sent Plaintiffs to in school suspension ("ISS") for defending themselves after being struck by paper, pens and/or pencils thrown by T.D. and other harassment conspirators in the math class.

27. Instead of dealing with the situation when it was made known to her, Ms. Keaton, called the assistant principal who removed all the students involved, including Plaintiffs who were the victims of the physical and verbal assault.

28. Plaintiffs were initially placed in In School Suspension ("ISS") and during this detention Plaintiffs contacted their parents to come to the school.

29. Plaintiffs parents began arriving at the school within 15 minutes of notification.

30. T.R.'s mother was made to wait approximately 20 minutes outside the school before she was permitted to speak with anyone.

31. The principal of the school came out and spoke to T.R.'s mother and I.M.'s mother and father who had arrived at the school by that time.

32. Plaintiffs were subsequently released to return to class with the school's assistant principal later determining that evening that Plaintiffs would be required to serve the ISS beginning the following day.

33. After being released to return to class, Plaintiff T.R. went to the weight room for her P.E. class.

34. Plaintiff I.M., who was permitted to meet his parents while they were speaking with the principal, was allowed to walk back to the P.E. class shortly after T.R.

35. Upon I.M.'s arrival in the weight room, Plaintiffs I.M. and T.R. moved closer to each other.

36. At that time, the other harassment conspirators who Plaintiffs had previously identified to the school as their harassers, bullies, racist remark makers, and cyberbullies and who were in support of T.D.'s actions earlier that day began making comments to them about the events in Ms. Keaton's math class.

37. Upon information and belief, these same harassment conspirators, D.T., S.M., J.T., and R.M., demanded that Plaintiffs come over to speak with them.

38. Plaintiff I.M. complied with their request in an attempt to prevent any further derogatory name calling.

39. D.T. began talking to Plaintiff I.M. calling him derogatory names.

40. Plaintiff I.M. began walking away when D.T. pushed Plaintiff I.M. in the back.

41. Plaintiffs attempted to walk away from the group of harassment conspirators, when D.T. pushed Plaintiff I.M. in the back again and hit Plaintiff T.R. in the head.

42. Immediately after D.T. assaulted the Plaintiffs, the Plaintiffs began to defend themselves while yelling and screaming at D.T..

43. Upon information and belief, students are permitted to employ reasonable force to repel an attacker in self-defense and/or defense of another when as here the teacher was unavailable and/or unwilling to protect the students from their assailant.

44. Only after Plaintiffs were assaulted by D.T. did the harassment conspirators began recording the fight instigated by D.T. and his harassment conspirators.

45. The harassment conspirators, including D.T., intended to provoke a fight with the Plaintiffs so they could post the fight on social media, as had been the custom and practice throughout the school year.

46. The P.E. teacher belatedly broke-up the fight and Plaintiffs were sent home while the school performed an alleged investigation.

47. On or about September 28, 2021, Plaintiff I.M. was sent a formal written Notice of Disciplinary Action that he would be suspend for 10 days with the recommendation for long-term suspension for "Physical Assault on a Student by Two or More Students."

48. Upon information and belief, having a zero tolerance policy such as the physical assault on a student by two or more students policy does not afford students with due process if they are acting in self-defense or the defense of others.

49. Neither Plaintiff T.R. nor her mother received formal written Notice of Disciplinary Action consistent school board policy or state law, N.C. Gen. Stat. § 115C-390.8(a), which requires that when a student is recommended by the principal for long-term suspension, the principal shall give written notice to the student's parent.

50. State law requires that the notice shall be provided to the student's parent by the end of the workday during which the suspension was recommended when reasonably possible or as soon thereafter as practicable. The written notice shall provide at least the following information: (1) A description of the incident and the student's conduct that led to the long-term suspension recommendation. (2) A reference to the provisions of the Code of Student Conduct that the student is alleged to have violated. (3) The specific process by which the parent may request a hearing to contest the decision, including the number of days within which the hearing must be requested. (4) The process by which a hearing will be held, including, at a minimum, the procedures described in subsection (e) of this section. (5) Notice that the parent is permitted to retain an attorney to represent the student in the hearing process. (6) The extent to which the local board policy permits the

parent to have an advocate, instead of an attorney, accompany the student to assist in the presentation of his or her appeal. (7) Notice that the parent has the right to review and obtain copies of the student's educational records before the hearing. (8) A reference to the local board policy on the expungement of discipline records as required by G.S. 115C-402.

51. Upon information and belief, absent such formal written notice a suspension of more than ten (10) days violates a student's substantive and procedural due process rights as outlined in Givens v. Poe, 346 F.Supp. 202 (W.D.NC. 1972).

<u>Post-Suspension Deficiencies in Subsequent Hearing Processes</u>

52. On September 29th, 2021, Plaintiffs requested a hearing on the suspensions, noting that state law and school board policies had not been followed.

53. Plaintiffs  requested copies of the their educational records, including copies of all witness statements; law enforcement incident reports or criminal referrals made by any member of the school community and/or the school resource officer; video evidence from September 27th, 2021, including but not limited to, the Math classroom footage, footage from the hallway, footage from the gymnasium, and any other relevant video footage; administrative reports, including but not limited to investigatory and/or disciplinary reports and witness statements related to the incident two and a half weeks prior; and each student's academic, exceptional children, and/or  disciplinary files, if such exist.

54. Defendant BOE failed to provide Plaintiffs with exculpatory and/or mitigating  emails, videos, or other documentation received by school officials that would demonstrate the scope, duration, and/or intensity of racial discrimination, harassment, and/or bullying exerted by D.T. and/or any of his harassment conspirators prior to the fight.

55. Defendant BOE failed or otherwise refused to provide any emails sent by Plaintiffs to the school or by officials from the school documenting the complaints of Plaintiffs, their parents, or others that may have shed light upon the actions of D.T. and the harassment conspirators relevant to the long-term suspension hearing.

56. Prior to the hearing, Plaintiffs requested that Defendant BOE make witnesses available that would support Plaintiffs claims of the alleged events and potentially rebut the statements of Plaintiffs' accuser, D.T.

57. Plaintiffs provided Defendants BOE a list of proposed witnesses in advance of the hearing.

58. In response to this request, Plaintiffs were informed that Defendant BOE would not make any student witness available without parental consent, which had to be obtained by Plaintiffs and provided to the school prior to the hearing.

59. Plaintiffs also requested that the following teachers and administrators be made parties to the proceedings and serve as witnesses:

   - Ms. Vaugh (Language Arts Teacher who was aware of other incidents of harassment)
   - Ms. Tammy Harrington (Administrative Office Employee)
   - Ms. Keaton (Mathematics Teacher)
   - Mr. ("Coach") Midget (P.E. Teacher)
   - Dr. Allan (Principal)
   - Mr. Dixon (Assistant Principal)

60. In response to Plaintiffs' request for these witnesses to be made available for examination at the hearing as witnesses, Defendant BOE required Plaintiffs to disclose the basis of the information to be sought from teachers and administrators prior to Defendant BOE permitting them to appear at the hearing.

61. There is no state or federal statutory authority, which precludes Defendant BOE from producing the aforementioned employee witnesses who had relevant information to add to the proceedings as a witness, an investigator, a decision-maker, and/or an individual offering exculpatory or mitigating evidence.

62. Plaintiffs timely objected to the aforementioned requirements as Defendant BOE utilized written statements of students upon information and belief without first obtaining the written consent of their parents and written statements of teachers and administrators, which formed the basis of the recommendation for long-term suspension of the Plaintiffs without making all of them available for examination during the proceedings.

63. In Plaintiffs letter of September 29th, 2021, their counsel requested that all records be provided prior to October 11th, 2021, the putative 10th day of Plaintiffs' suspension.

64. The records were not made available during this period and when educational records were provided emails and other documents were omitted.

65. On September 29th, Plaintiffs requested that they be permitted to continue to receive their assignments, and take quizzes and tests while being suspended consistent with state law and Defendant BOE policies.

66. Plaintiff I.M. received work assignments from only one teacher his language arts teacher, Ms. Vaughn, prior to Friday, October 15th, 2021.

67. On Friday, October 15th, 2021, both Plaintiffs received approximately 20 assignments from the math teacher, Ms. Keaton, which were due on October 15th, 2021 the final day of the semester.

68. The hearing in this matter was scheduled outside of the 10th day and beyond the statutory authority of Superintendent McLean and Defendant BOE without the consent of Plaintiffs.

69. Defendant BOE failed in their duty to protect Plaintiff I.M. and Plaintiff T.R. from the actions of D.T. and other students exposing racial animus against them solely because they were African American.

70. Defendant BOE failed in their duty to protect Plaintiff I.M. and Plaintiff T.R. from the action of D.T.. and the other racist students and the harassment conspirators, bullies, and cyberbullies who instigated and started the fights and recorded these and other fights with students they harassed.

71. Plaintiff I.M. has and continues to suffer severe emotional distress from the inaction of Defendant BOE and its employees related to the racial harassment and bullying occurring at the school such that he is afraid to return to the school for fear of additional assaults, suffered from sleeplessness and anxiety.

72. Plaintiff I.M. has subsequently transferred to Voyager Academy, a public charter school in Durham, as result of the discriminatory treatment, and has to have his parents drive him from Granville County to Durham County to attend high school in a non-threatening environment.

73. Plaintiff T.R. has and continues to suffer severe emotional distress from the inaction of Defendant BOEs and its employees related to the racial harassment and bullying occurring at the school such that she is afraid to return to school for fear of additional assaults, is prone to crying spells when confronted about the harassment and bullying and exhibits anxiety related to the bullying.

74. Upon information and belief, T.R. remains in Granville County schools.

75. Defendant BOE and its employees failed to report the actions of the cyberbullies to law enforcement upon receipt of information regarding the same.

76. Plaintiffs long-term suspension hearing was held by Defendants for October 19th, 2021, with a hearing officer and Superintendent McLean as the decision-maker.

77. At the hearing both Plaintiffs were tried together before Superintendent McLean and her designee, as Superintendent McLean did stay for the entire proceeding.

78. During the hearing Plaintiffs objected to the use of witness statements that were relied upon by Principal Allan and Assistant Principal Dixon that were used in making the determination to suspend, but were not introduced into evidence at the hearing, and that Plaintiffs were not given an opportunity to rebut through cross-examination because only D.T. and Mr. Midget, the P.E. teacher, were permitted by Defendant BOE to appear at the hearing.

79. During the hearing Defendant BOE used the witness statement of D.T., who appeared at the hearing via video conference.

80. During the hearing Plaintiffs' counsel was precluded from continuing to examine D.T., especially after he admitted to bullying and calling Plaintiff T.R. "ugly" and a "Nigger" several days prior to the incident, which Plaintiff T.R. had reported to school officials.

81. During the hearing, Mr. Midget admitted that he did not see what precipitated the incident and did not see D.T. with the urging of the harassment conspirators push and/or strike Plaintiffs prior to the start of the video used in the proceeding.

82. During the hearing, Assistant Principal Dixon, who was responsible for discipline admitted that he did not interview any students other than D.T. and the harassment conspirators.

83. Plaintiffs' witness list offered at least three female students in the P.E. classroom with versions of the incident that differed significantly from that of D.T. and his harassment conspirators, yet Defendant BOE took no steps to interview those disinterested individuals.

84. During the hearing Plaintiffs' were precluded by the hearing officer from asking Assistant Principal Dixon whether his disciplinary determination was based upon the statements of D.T. and the other harassment conspirators.

85. During the hearing, the hearing officer deferred to counsel for Defendant BOE in making decisions regarding issues of import to the proceeding affecting Plaintiffs substantial and procedural due process rights.[3]

86. Plaintiffs submitted cogent and competent evidence that contradicted the statements of D.T., his harassment conspirators, and the portion of the video released by the harassment conspirators on the GCHS fight website.

87. Superintendent McLean exceeded her statutory authority by rendering a written decision against Plaintiff I.M. on October 25th, 2021, more than ten (10) days after the initial recommendation of long-term suspension.

---

[3] The Hearing Officer only contacted outside counsel on one occasion and deferred to Defendant BOE' legal counsel on multiple occasions when making substantive and procedural determinations during the hearing.

88. Plaintiff I.M. has been improperly excluded from school because of Superintendent McLean's improper actions and his disciplinary record and/or attendance record have been adversely impacted, upon information and belief, as they have not been corrected consistent with the law.

89. The written decision of Superintendent McLean failed to provide written findings of fact as determined by the hearing officer consistent with the disciplinary statute, which impermissibly forced Plaintiff I.M. to appeal the determination to Defendant BOE without adequate knowledge of the facts that formed the basis of Superintendent McLean's determination.

90. Superintendent McLean ordered a ten (10) day suspension and a disciplinary transfer for Plaintiff I.M. to Phoenix Academy, a district alternative school, in an effort to silence the concerns raised by his complaint of racial harassment and bullying.

91. As of November 2nd, 2021, neither Superintendent McLean nor Defendant BOE had provided Plaintiff T.R. with written notice of a disciplinary decision.

92. Plaintiff T.R. was barred from GCHS without written justification or cause in violation of her procedural and due process rights.

93. Plaintiff T.R. had not been provided a written determination or an opportunity to appeal Superintendent McLean's determination but rather was called by the hearing officer over the weekend and orally told that she was suspended from school for the remainder of the semester and would be able to return to Phoenix Academy at the start of the second semester.

94. Upon information and belief, the Phoenix Academy is an alternative school, which is comprised primarily of African American students for alleged disciplinary actions.

95. Upon information and belief, very few white students are disciplinarily reassigned to Phoenix Academy for substantially the same offenses alleged against Plaintiffs and other African American students.

96. Upon information and belief, the quality of instruction and the educational opportunities of students are substantially different from those offered in Defendant BOE's traditional public schools, as evidenced by substantially lower test scores and student outcomes.

97. Upon information and belief, Defendant BOE is treating its African American students sent to Phoenix Academy differently from their white counterparts due to the inferiority of the education and resources provided there.

98. Upon information and belief, Defendant BOE has treated D.T., the white male student who instigated the fight differently from Plaintiffs I.M. and T.R. as he was not disciplined or removed from school based upon his actions related to the incident.

99. Upon information and belief, African American students are more likely to have adverse disciplinary consequences such as suspensions of ten (10) days or more, which include a disciplinary transfers to Phoenix Academy at a substantially higher rate, than white students attending Granville County Schools for the same or substantially similar offenses.

100.    Upon information and belief, Plaintiffs I.M. and T.R., were not afforded the same due process rights as white students facing out of school disciplinary suspension and/or disciplinary transfer to the alternative school, Phoenix Academy.

101.    Plaintiffs timely appealed the adverse disciplinary decisions of Defendant BOE to the North Carolina Superior Court on or about November 8, 2022, seeking a temporary restraining order, preliminary and permanent injunction, as well as judicial review of the

due process violations committed by Defendant BOE, these matters were subsequently transferred to the U.S. District Court for the Eastern District of North Carolina, Western Division.

<u>COUNT ONE: VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964</u>

102. The allegations contained in paragraphs 1-102 are realleged herein and incorporated by reference.

103. Plaintiffs I.M. and T.R. are members of a protected class based upon their race, African American.

104. Defendant BOE has discriminated against them by treating them differently from their white male assailant during the course of events related to the fight and the discipline met out therefrom.

105. Title VI of the Civil Rights Act of 1964 states that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

106. Defendant BOE is a recipient of federal funds and is precluded from discriminating against Plaintiffs on the basis of their race, African American, in its programs and activities, which includes the use of disciplinary transfers pursuant to state law in an effort to circumvent equal treatment and protection pursuant to Title VI of the Civil Rights Act of 1964.

107. Defendant BOE's violations of Title VI of the Civil Rights Act of 1964 on the basis of race has and continues to cause Plaintiffs harm, embarrassment, mental anguish and suffering such that Plaintiffs are entitled to damages in excess of $75,000.00.

<u>COUNT TWO: DISCRIMINATION BY VIOLATING PLAINTIFFS' DUE PROCESS
RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION</u>

108.     The allegations contained in paragraphs 1-107 are realleged herein and incorporated by reference.

109.     Defendant BOE has a duty to apply state law and its own school board policies in taking disciplinary actions against students equally among all students and with an eye toward substantive and procedural due process under the 14th Amendment to the U.S. Constitution.

110.     Defendant BOE has violated the 14th Amendment to the U.S. Constitution by failing to provide equal protection and substantive and procedural due process to African American students such a Plaintiff I.M. and Plaintiff T.R. when applying its disciplinary policies.

111.     The actions of Defendant BOE in failing to provide Plaintiff T.R. formal written notice of the proposed long-term suspension violate her substantive and procedural due process rights pursuant to the 14th Amendment to U.S. Constitution.

112.     The inaction of Defendant BOE by failing to provide Plaintiffs I.M. and T.R. access to or copies of all of their educational records requested, including but not limited to their entire academic, exceptional children, and/or disciplinary files consistent with the requirements of FERPA found at 20 U.S.C. §§1232g(a)(1) (A) and (B), and/or as soon as practicable pursuant to <u>Givens v. Poe</u>, supra.

113.     The actions of Defendant BOE in refusing to make teachers and administrative witnesses appear at the disciplinary hearing of Plaintiffs I.M. and T.R. who may have exculpatory and/or mitigating evidence violates the Plaintiffs' substantive and procedural due process rights under the 14th Amendment to the U.S. Constitution.

114.     The failure of Defendant BOE to hold the long-term suspension hearings of
Plaintiffs within ten (10) days of Plaintiffs' out of school suspension violates Plaintiffs'
substantive and procedural due process rights under the 14th Amendment to the U.S.
Constitution.

115.     The failure of Defendants to allow Plaintiffs to return to school within the
statutorily required time frames violates the substantial right of each Plaintiff under the
14th Amendment to the U.S. Constitution to attend school in the same manner of other
students.

116.     The aforementioned violations of Plaintiffs substantive and procedural due
process rights and state law and school board policies have and continue to cause
Plaintiffs substantial harm to Plaintiffs in that they are not being afforded their
Constitutional right to attend public school or have a fair long-term suspension hearing.

117.     Plaintiffs seek damages in excess of $75,000 for the violations under the 14th
Amendment to the U.S. Constitution by Defendant BOE.

COUNT THREE: REQUEST FOR  PERMANENT INJUNCTION

118.     The allegations contained in paragraphs 1-118 are realleged herein and
incorporated by reference.

119.     Plaintiffs substantive and procedural due process rights have been and continue to
be violated by Defendants in that:

a)  Defendant BOE  failed to provide Plaintiff T.R. with formal written notice of the
    proposed long-term suspension as well as formal written notice of Defendant
    Superintendent McLean's determination while continuing to keep her out of school,
    which violates her substantive and procedural due process rights under the 14th

Amendment to the U.S. Constitution, as articulated in <u>Givens v. Poe</u>, supra, and adversely impacts Plaintiffs' substantive rights to a free public education.

b) Defendant BOE's application of an arbitrary and capricious standard of it determining whether teachers and school administrators can be withheld from appearing as witnesses prior to a hearing when such a policy is not imposed by state statute nor previously disclosed in the policies and procedures provided and approved by Defendant BOE violates Plaintiffs' substantive and procedural due process rights under the 14th Amendment to the U.S. Constitution and adversely impacts Plaintiffs' substantive rights to a free public education.

c) Defendant BOE failed to hold the long-term suspension hearings of Plaintiffs within ten (10) days as required by law and school policy thereby violating Plaintiffs' substantive and procedural due process rights under the 14th Amendment to the U.S. Constitution, as articulated in <u>Givens v. Poe</u>, supra, and adversely impacts Plaintiffs' substantive rights to a free public education.

d) Defendants impermissibly held Plaintiffs out of school beyond Superintendent McLean's statutory authority, which violates their substantive and procedural due process rights under the 14th Amendment to the U.S. Constitution, as articulated in <u>Givens v. Poe</u>, supra, and adversely impacts Plaintiffs' substantive rights to a free public education.

e) Defendant BOE has impermissibly and/or intentionally established a systemic application of disciplinary rules which discriminates against African American students such as the Plaintiffs by imposing differential treatment against them as opposed to the similarly situated specifically identified white counterparts, for

disciplinary outcomes, including but not limited to disciplinary transfer to Defendant BOE's alternative school. Phoenix Academy, caring with it a red badge of shame, stigma, and inferior education, in violation of Title VI of the Civil Rights Act of 1964.

120.     If these discriminatory, and/or procedural and substantive due process violations are not enjoined by the Court, Plaintiffs will suffer irreparable harm in that their substantive right to a free public education will be irreparably effected and their right to be free from discrimination by a federally funded public education entity will be curtailed.

121.     Plaintiffs seek permanent injunction preventing Defendant BOE:

a)  Entering the disciplinary suspension records and disciplinary transfer records from being placed into Plaintiffs educational records pending a full and fair hearing.

b)  Ordering Defendant BOE to hold new hearings for each Plaintiff with proper Notice and permitting each Plaintiff to call witnesses who are in Defendant BOE's control and/or custody and requiring their testimony, including but not limited to teachers and administrators that may have exculpatory and/or mitigating information related to Plaintiffs' defense and/or rebuttal to the disciplinary charges.

c)  Requiring Defendant BOE to apply its disciplinary suspension and disciplinary transfer policies equitably to African American students, especially, Plaintiffs, as it would to white students.

d) Requiring that the education provided to students at Defendant BOE's alternative school, Phoenix Academy, provide an equivalent education to that provided in Granville County's traditional public schools.

122.    Defendant BOE will not suffer substantial harm by the imposition of the requested permanent injunction upon balancing of the parties interests.

123.    Plaintiffs substantive rights to a free public education and to be free from discriminatory treatment in federal funded programs and activities cannot be vindicated by any other means than issuance of a permanent injunction.

WHERFORE, Plaintiffs pray that this Court enter the following orders:

1. Find that Defendant BOE has violated Title VI of the Civil Rights Act of 1964 and award Plaintiffs damages commiserate with such findings, including but not limited actual damages, compensatory damages, and exemplary damages as proven at trial or otherwise, jointly and severally;

2. Find the Defendant BOE has violated each Plaintiff's right to substantive and procedural due process and equal protection under the 14th Amendment to the U.S. Constitution, and Plaintiffs damages commiserate with such findings, including but not limited to actual damages, compensatory damages, and exemplary damages as proven at trial or otherwise, jointly and severally;

3. Issue a Permanent Injunction preventing Defendant BOE:

a) Entering the disciplinary suspension records and disciplinary transfer records from being placed into Plaintiffs educational records pending a full and fair hearing.

b) Ordering Defendant BOE to hold new hearings for each Plaintiff with proper Notice and permitting each Plaintiff to call witnesses who are in Defendant BOE's control and/or custody and requiring their testimony, including but not limited to teachers and administrators that may have exculpatory and/or mitigating information related to Plaintiffs' defense and/or rebuttal to the disciplinary charges.

c) Requiring Defendant BOE to apply its disciplinary suspension and disciplinary transfer policies equitably to African American students, especially, Plaintiffs, as it would to white students.

d) Requiring that the education provided to students at Defendant BOE's alternative school, Phoenix Academy, provide an equivalent education to that provided in Granville County's traditional public schools.

4. Taxing the costs of this action and awarding Plaintiffs attorney's fees and costs as provided by law and/or in the Court's discretion;

5. Providing such other and further relief to Plaintiffs as this Court deems just and proper; and

6. Plaintiffs hereby demand trial by jury on all matters so triable.

This the 19th day of December, 2022.

**BOWENS & AVERHART, PLLC**

/s/Stephon J. Bowens
Stephon J. Bowens, Esq.
North Carolina State Bar No.: 20876
5500 McNeely Drive, Suite 101
Raleigh, North Carolina 27612
(919) 741-6798 Office
(888) 686-0456 Facsimile
stephon@bowens-averhart.com

*Attorneys for Plaintiffs I.M and T.R.*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a copy of the foregoing Plaintiffs' First

Amended Complaint was served on all parties and/or counsel of record by filing electronically

with the Clerk of the Court using the CM/ECF and depositing a copy of the same in the United

States mail, postage prepaid, and properly addressed as follows:

 Maura K. O'Keefe, Esq.
 And Eva B. DuBuisson, Esq.
 Tharrington Smith, L.L.P.
 150 Fayetteville Street, Suite 1800
 Post Office Box 1151
 Raleigh, North Carolina 27602-1151
 mokeefe@tharringtonsmith.com
 eva@tharringtonsmith.com
 *Attorneys for Defendant BOE*

This the 19th day of December, 2022.

      /s/Stephon J. Bowens
      Stephon J. Bowens